**Lawrence Weber and Helen Weber, His Wife, Plaintiffs-Appellees, v. Village of Skokie, Cook County, Illinois, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 51,727.**

First District, Second Division.

February 27, 1968.

Rehearing denied March 26, 1968.

Harvey Schwartz, Corporation Counsel, of Skokie (Morton C. Kaplan, Assistant Corporation Counsel, of counsel), for appellant.

McCarthy, Witry, Lyon & McCarthy, of Chicago, for appellees.

MR. JUSTICE LYONS delivered the opinion of the court.

This was an action in the Circuit Court of Cook County for a declaratory judgment brought by plaintiffs, Lawrence Weber et ux., against the defendant, Village of Skokie, Illinois (hereinafter referred to as the Village) to contest the validity of a particular zoning ordinance which had been in force in that community since 1946. Plaintiffs, by such proceedings, sought an adjudication of their right to construct a single-family dwelling upon an individual parcel of property held by them in joint tenancy, which parcel, subsequent to its acceptance as part of an overall plat of subdivision in 1924, was rendered inadequate by ordinance of 1946 as to both the width and total area minimum standards made requisite for the construction of a single-family dwelling.

After hearing considerable testimony and argument in the matter, the court below, on June 28, 1966, entered a decree which, among its other terms, concluded that the aforementioned standards of the ordinance were unconstitutional as applied to plaintiffs, amounting to a taking of their property without due process of law. The court thereinafter perpetually enjoined the Village from

356

either enforcing such provisions of the ordinance against plaintiffs or from interfering with them in their utilization of the premises for the construction thereon of a single-family dwelling. It is from the entry of this decree that the Village brings its appeal.

There would thus appear to be presented by the instant appeal the single question of whether a subsequently enacted zoning ordinance, which purports to restrict the construction of residential structures to property sites meeting certain minimum space requirements, may override or supersede the width and area specifications of a previously accepted and recorded plat of subdivision, to the detriment of one who claims by it.

As indicated, the facts giving rise to the present dispute were first set in motion in June of 1924 when a plat of subdivision (commonly known as the Knenn & Dato's Oakton-Kostner "L" Subdivision), the authenticity of which is not questioned, was accepted and duly recorded in the Office of the Recorder of Deeds of Cook County, Illinois as Document No. 8456626. Said plat, as recorded, purported to subdivide the subject general tract into 59 consecutively numbered lots of somewhat varying sizes. We might interject that such individual lots, by the test of the subsequently enacted ordinances of the Village, would have been, with but minor exception, substandard to both the frontage and area requirements for single-family dwelling construction purposes. To a considerable extent, controversies, such as the one at bar however, have been avoided because adjoining parcels in the plat were initially acquired and disposed of in common ownership. Such was the case of plaintiffs' predecessor in title.

For the purposes of brevity, we will limit our examination of the plat to those parcels fronting upon the 7900 block of Lowell Avenue, which rest in closest proximity to the subject site. That block runs north and south between Oakton and Kirk Avenues and is depicted by the

plat as representing 26 subdivided lots of approximately equal dimensions. Save two larger parcels on that block at the corner of Kirk Avenue, all of the lots within this limited sector of the plat (including the subject property), front 33 feet upon Lowell, have depths of approximately 123 feet, and afford slightly in excess of 4,000 square feet in total area.

As accurately as we can discern from the record, plaintiffs' immediate predecessor in title, in or about the year 1928, purchased three such contiguous lots each of which abutted on the east side of Lowell at 7929 and 7925 respectively. These lots were numbered from north to south as parcels 11, 12 and 13 and provided a total frontage on the street of 99 feet with in excess of 12,000 square feet. Two structures were erected at that approximate time; i. e., a residence home upon parcel 11 which partially protruded over the south lot line onto parcel 12, and a garage set off and to the back of that residence upon the rear portion of said parcel 12. These two parcels taken together are known as 7929 Lowell Avenue. The aforesaid structures are still standing and being utilized. Parcel 13 adjacent the garage, subsequent to its acquisition, was left vacant, it being commonly known as 7925 Lowell Avenue.

The three properties remaining in the common ownership of the original purchaser, the Village in 1946 first enacted the zoning ordinance which has been made the object of our attention. Such ordinance prohibited the construction of single-family dwellings upon lots within the present classification of R–2 (Single-Family Residence District) not meeting the minimum standards set forth of 40 feet in width and 4,800 square feet in overall area. This same prohibition continues to be in force in amended form to date. (Amended Zoning Ordinance of the Village of Skokie (1965) Article VIII, Section C, subsection (2) and (3).)

In February of 1951, plaintiffs purchased lots 11, 12 and 13 from the aforesaid common owner, those parcels, continuing to answer to their heretofore narrated description. Plaintiffs resided in the home at 7929 Lowell for some 13 years without making any substantial additions or alterations thereto, and until April of 1964 when they jointly conveyed lots 11 and 12 to a Mr. and Mrs. Robert Noesen. The subject parcel, lot 13, however was not so conveyed, the Noesens testifying that they twice refused plaintiffs' offers to sell it separately for prices of $5,000 and $5,500. Said lot 13 being substandard to minimum specifications, plaintiffs, on June 30, 1965, filed an application for a variation with the Zoning Board of Appeals of the Village, manifesting their desire to construct a single-family dwelling on the site. After full hearings, the Board, in November of 1965, unanimously denied plaintiffs' application, no review pursuant to the Administrative Review Act having ever been taken therefrom by plaintiffs.

It is plaintiffs' theory that the questioned ordinance contravenes the recorded plat upon which they had a right to rely to the extent that the restrictions thereby imposed are so arbitrary and capricious so as to amount to a deprivation of their property without just compensation. In response, it is the Village's theory that the enforcement of minimum frontage and area requirements to substandard lots of record bears a substantial and rational relationship to the legitimate exercise of its powers as a municipality; to wit, the preservation of the public health and safety.

■ We do not take plaintiffs to contend that the minimum lot width and area requirements per dwelling unit of the ordinance were per se beyond the realm of authority of the Village to enact, but rather that the restrictions thereby imposed are unreasonable and unconstitutional as applied to their particular property.

With citation to Galt v. County of Cook, 405 Ill 396, 91 NE2d 395 (1950), plaintiffs acknowledge the presumption which obtains and prevails in favor of the validity of the ordinance, absent an affirmative showing that its provisions are clearly arbitrary and unreasonable. Plaintiffs submit however, that their theory is such that, if sustained, would transcend any otherwise legitimately exercised and rational objective of that ordinance. While we have no quarrel with that supposition, the argument which professes to support it is an untenable one.

██ ██ By their contention that the mere acts of approval and recordation of a plat of subdivision operate so as to secure and vest rights in and to the property designated for private ownership, plaintiffs must necessarily rely upon the provisions of our Plat Act (Ill Rev Stats (1965), c 109, par 1 et seq.) which admittedly antedate the general laws of zoning. That statute, however, purports to extend no such sanctions over lot sizes within the private aspect of the subdivision so platted. It is evident from the Act that the purpose to be served in requiring the submission of plats to governmental approval is to insure that adequate provision has been made for streets, alleys, parks and other public facilities indispensable to the particular community affected. Bluett v. County of Cook, 19 Ill App2d 172, 153 NE2d 305 (1958). Such a design becomes manifest by the provisions of that statute which hold a dedication by plat to be a conveyance in fee simple of those portions so noted to facilitate that end (as contrasted with the common-law rule which treated a dedication as creating an easement only with the fee remaining in the adjoining lot owners; Lambach v. Town of Mason, 386 Ill 41, 53 NE2d 601 (1944)), exempt from its requirements proposed subdivisions not involving new streets or easements of access, and which impose a penalty for noncompliance therewith.

Of particular insight in this regard is the case of Highland Oil Corp. v. Lathrup Village, 349 Mich 650, 85 NW2d 185 (1957), where responding to a similar theory which claimed the benefit of the area specifications of a plat adversely affected by a subsequent zoning ordinance, the Supreme Court of Michigan stated:

"We do not think . . . that plaintiffs' property, . . . may escape the classification and restrictions imposed by the ordinance on the ground of unreasonableness merely because the property happens to have been platted with lines at 20-feet intervals for lot boundaries. That is not a fact or circumstance which affects or detracts from the reasonableness of the classification. If it were held to be so, the result would be that it would be competent for landowners to perpetually defeat future zoning restrictions by crisscrossing their lands on a plat map with lines ostensibly dividing the same into parcels so small that each would be unsuited to any foreseeable use unless combined with others. The test of reasonableness may not be distorted or thwarted by any such artificial device."

So too in the case at bar, plaintiffs cannot attempt to sway the "test of reasonableness" to the Village's disfavor by their claim to rights vested by a statute clearly not intended for such purpose. Not unlike the Highland case, the feared perpetual defeat of zoning ordinances would find application to at least three additional lots just within the immediate 7900 block of Lowell Avenue, each being homesites abutted by a commonly owned substandard vacant side yard. Plaintiffs then cannot be said to have acquired an irrevocable right simply by virtue of the plat's recordation pursuant to this statute. State ex rel. v. Dodge, 113 Ohio App 118, 177 NE2d 515 (1960).

Plaintiffs' particular claim, moreover, by the indication of precedent in our jurisdiction, would appear to found itself upon inarticulated principles of equitable estoppel thereby presenting a question of fact peculiar to the circumstances by which it has arisen. River Forest Bank v. Village of Hillside, 6 Ill2d 451, 129 NE2d 171 (1955); Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE2d 453 (1958). But in reviewing the record here, we can find no acquisition of rights by change of position in purported reliance upon the plat of subdivision. It is an argument, we feel, unsupported by the evidence.

The only supporting testimony by plaintiffs accounted that, prior to their disposition of the two parcels, plaintiffs had received individual property tax assessments for each of the three lots, and that when soliciting such properties for sale, lot 13 was offered separate and apart from the homesite which included lots 11 and 12. Plaintiffs further showed, in this vein, that variations had been granted to erect dwellings upon singly owned substandard 33-foot lots at 7916 and 7921 Lowell Avenue respectively, the latter being the immediately neighboring house to the south of the subject lot.

The evidence adduced by the Village, however, adequately demonstrated that, in fact, plaintiffs did not rely on the platting of lot 13. Its presentation, we think, affirmatively established that plaintiffs had, at all times during their 13-year tenure of ownership and residency, treated the three parcels as a single integrated property or homesite, such being inconsistent with their claim of reliance. It appears that said lot 13, as an adjacent vacant parcel, was employed during that period as a side yard to the dwelling, it being utilized for recreational purposes contemporaneous with plaintiffs' residence in the living quarters. Testimony and exhibits showed that the lot had been enclosed to the home and set apart from the neighboring premises by a fence along its south lot line. Various pieces of juvenile play-

ground equipment, picnic benches, a brick barbecue pit, as well as an underground sprinkler system had likewise been installed upon the side yard premises, these facilities being used in conjunction with plaintiffs' use of the abode.

As to the proposition that variations had been granted to the owners of substandard parcels at 7916 and 7921 within the block, the record vividly reveals that argument to be a fallacious one. Those two parcels, by the governing provisions of the Village ordinance, were, unlike plaintiffs' parcel, not; ". . . adjoining and contiguous to a vacant lot on either side held under common ownership at any time after the year 1946 . . ." and hence rightfully entitled to the variation granted. (Amended Zoning Ordinance of the Village of Skokie (1965) Article XIII, Section C, subsection 5(b).)

Thus, the circumstances attendant plaintiffs' ownership of the three properties demonstrate no such reliance upon the plat, but to the contrary, a utilization of the three parcels as one, upon notice of, and consonant with the definition of the terms "lot" and "lot of record" as they appeared in and were made the object of the 1946 zoning ordinance prohibitions. A "lot" was therein defined as:

> "A parcel of land occupied or intended for occupancy by a use permitted in this Ordinance, including one (1) main building together with its accessory buildings, . . . and having its principal frontage upon a street. . . ."

A "lot of record" was further defined as:

> "A lot which is a part of a subdivision, the map of which has been recorded in the office of the Recorder of Deeds of Cook County, Illinois; . . . ."

The distinguishing and noteworthy factor here which strongly militates against any justification for reliance

is the inescapable fact that plaintiffs took title to the subject premises five years subsequent to the enactment of the instant ordinance and hence with knowledge of the requirements thereby imposed upon the property they acquired. Under such circumstances, we are inclined to believe that any financial disadvantage which might accrue to plaintiffs, is a self-created one. LaSalle Nat. Bank v. Village of Western Springs, 30 Ill2d 340, 196 NE2d 680 (1964).

In regard to the elimination or expiration of land uses and rights thereto, the Illinois Municipal Code (Ill Rev Stats (1945), c 24, art 73, § 73-1), from which the Village derived its authority to so regulate, provided in part:

> ". . . but provisions may be made for the gradual elimination of uses, . . . which are incompatible with the character of the districts in which they are made or located, including, . . . provisions (a) for the elimination of such uses of unimproved lands or lot areas *when the existing rights of the persons in possession thereof are terminated. . . .*" [Emphasis supplied.]

Concomitant with its grant of power, the 1946 ordinance was enacted with appropriate provisions for the exemption of adversely effected preexisting rights. Whatever rights plaintiffs' predecessor in title may have had is an academic question as a vested right is acquired, if at all, not by the land but by the owner and then only under conditions which have been shown not to exist in the instant case. Bonan Realty Corp. v. Young, 16 Misc2d 119, 182 NYS2d 132 (1958).

In light of the foregoing, plaintiffs cannot by their ad hoc reasoning now seek to avoid the minimum requirements of the ordinance by conveying away a portion of their residence and contending, that as to that which remains, the restrictions imposed are arbitrary and unreasonable. Such an argument is, in effect, a claim to acquisition of greater rights by virtue of the simple dis-

position of the two adjoining parcels, and hence must be rejected. Galpin v. Village of River Forest, 26 Ill2d 515, 187 NE2d 233 (1962); Reitman v. Village of River Forest, 9 Ill2d 448, 137 NE2d 801 (1956); Cf. Vetter v. Zoning Board of Appeals of Attleboro, 330 Mass 628, 116 NE2d 277 (1953).

Plaintiffs have ofttimes alluded to this same proposition to support their ancillary contention that the Skokie Zoning Board of Appeals arbitrarily denied their application for a variation. Suffice to say, that contention, related as it may be to the merits of the principal cause, is neither relevant to our disposition of the issue at bar nor properly before this court for consideration. Plaintiffs do not maintain that the appropriate channels of administrative review from the Board's determination on the matter were either foreclosed or unavailing. Rather, they simply rely upon the recitation in the instant decree that plaintiffs had exhausted their administrative remedies. As to the Board's decision, however, our review of the proceedings below have shown no such exhaustion of remedies, and hence we are not bound by that finding. Plaintiffs, accordingly, cannot assail the propriety of the Board's disposition as to the question of variation while on the appeal of their subsequent action for relief, by declaratory judgment, from the alleged confiscatory nature of the ordinance. Stemwedel v. Village of Kenilworth, 14 Ill2d 470, 153 NE2d 79 (1958).

■ In any event, the subject lot was not rendered "valueless for all practical purposes" as plaintiffs would suggest, both expert and lay testimony establishing a diminution of the value of lot 13 from approximately $7,000 as a building site to approximately $3,300 to $2,000 as a vacant parcel. The evidence, moreover, was at best equivocal as to such relevant factors as aesthetic value, uses of nearby property, and the resulting appreciating or depreciating effect upon neighboring land values, offers of insufficient moment to overcome the

presumptive validity of the ordinance. Stemwedel v. Village of Kenilworth, supra; Chicago City Bank v. Highland Park, 9 Ill2d 364, 137 NE2d 835 (1956).

Lest we are prepared to immunize from regulation all properties recorded under antedating plats of subdivision, the instant ordinance's substantial and rational relationship to the legitimate objectives of restrictive zoning we feel necessitate that, as applied to plaintiffs' lot, that ordinance be sustained.

For the above reasons, the decree is reversed.

Decree reversed.

BURKE, P. J. and McNAMARA, J., concur.